Would the attorneys who are going to orally argue, please come to the podium and identify yourselves, introduce yourself. Good morning, Justices. My name is Burton F. Grant. I represent the appellants. That would be Susan DiGiovanni and my law firm, Grant & Grant PC, and myself, Burton F. Grant. Mr. Grant. Good morning, Your Honors. My name is Marvin Leavitt. I'm here with Mr. Adam Keeboer, who represents the appellate, Nick DiGiovanni. Both of you will have 15 minutes. The appellant, if you wish to respond or reply, you'll have to save time out of your 15-minute portion. Thank you, Your Honor. We'll begin with the appellant. Thank you. Mr. Grant. The orders on appeal in this case were entered, there are three orders, they were entered on June 3, 2010, August 10, 2010, and October 14, 2010. In 2009, October 2009, the Supreme Court in Blum v. Koster rendered an opinion that is critical to the case at bar. The Supreme Court in Koster, in Blum v. Koster, relied on In Re Marriage of Golden, which is a 2005 Second District case. In the Blum case, the Court had several holdings. The first concerned whether or not the burden on the move-ons in an application for an extension of maintenance must show a substantial change in circumstances, or whether it should be treated as a de novo hearing. The Supreme Court held it is to be treated as a de novo hearing. Do you think that's dispositive of this case, counsel, where the son had moved out? I know you argued in your reply brief that as a result of that, Susan then got the $14,500 and she deserved at least that. But then you filed a motion to increase the maintenance to $35,000 after taxes, which makes it $50-some-thousand. So you have to essentially triple the amount of maintenance from the 2007 order. And it is your argument today, as it is in your brief, that your case hinges on the standard of review in the trial court for whether or not it's substantially changed? Is that your argument? It's not a substantial change. My argument is you start from scratch. This is like you're coming to court. This is as if you're coming to court for the first time and seeking maintenance. You go through all the factors of Section 504, which would be the factors that the court would consider. We're familiar with the factors of 504, counsel. Yes. So we start from scratch. And what does that mean in terms of does that mean that the fact you get to start from scratch, does that then read out 3.7 of the marital settlement? 3.7, I refer to it as the penalty clause. You call it what you want. Does it read out the penalty clause? It would. That would obviate the penalty clause. The penalty clause, actually, if I may go into that now, Justice. Please. That's a clause that states that if someone prevails on a motion to modify within the five-year period. To increase, right? Increase. In front of us, right? Whoever wins, the other side pays. If Susan seeks an increase. It's in English. If Susan seeks an increase in the support amount paid by Nick to Susan, whether it be for child support, maintenance, et cetera, prior to the completion of five years of payments, and if Susan's petition is unsuccessful, she must pay 100% of Nick's attorney's fees. Right. Right. Did she seek an increase? Technically, no. She did not seek an increase. She is starting at zero. Although it was labeled petition to extend maintenance, you asked for an increase in that pleading, did you not? You can't define how much maintenance was being paid to her. Therefore, you cannot determine if you're seeking an increase, and we were not seeking an increase. Let's go to page two of your reply brief, the first sentence. Susan was seeking both an extension of her maintenance and a modification since she wanted an increase in maintenance. She wanted an increase in the amount that previously was being paid to her as unallocated support. That's not an increase in maintenance. We don't know how much maintenance was. Under Blum v. Koster. Well, it was as much as $35,000, which is what you chose to ask for. That is pure maintenance that was being sought as basically from a de novo standpoint. It is not to be compared to the previous unallocated amount. Blum v. Koster, Supreme Court said, you cannot define how much was maintenance and how much was child support in an unallocated support. And what was the amount given in 2007 unallocated? In 2007, before it was reduced, it was $20,000 per month. Right. So even taking that, the $20,000, the request, your request for $35,000 post-tax, right, isn't that more than $20,000? Or am I missing something? That's more than what was being paid. But that is not technically an increase in maintenance. Okay. Go ahead. Counsel, can I ask you, do we, what's your argument relative to the standard of review for the appellate court in this case? The standard of review is that it's a de novo hearing. For us, for this court, it's de novo. It's de novo hearing even for the trial court. The trial court should not judge the case on creating a burden to have to prove a substantial change in circumstances. No, I understand that's your argument. But for our review, is it de novo as well? It's de novo as well. That's the way that I look at the Blum case and the Golden case. Now, getting back to moving on, I should say, to the penalty, what I call the Penalty Clause 3.7, the, you cannot determine who won or lost on the motion. That's one point. And that's pursuant to Blum v. Koster, as I had previously argued. The second point is that the original award, even if you could define how much of it was maintenance, was for a limited period of time. The final award, which was $6,875 a month, was made permanent. That goes on for years and years and years and potentially goes on until Susan DiGiovanni passes away. It could go on that long. So there's no review of that? It could be reviewed. That's modifiable. In that it is a permanent award, it is modifiable. However, if it never was modified, it could be an extremely greater, substantially greater amount than the unallocated award was, even if it could be interpreted that the total unallocated award was all maintenance. It would be a substantially greater amount and, therefore, technically would make Susan a winner. Now, the original unallocated award, I'll just write that, the original marital settlement agreement setting the unallocated amount under Blum v. Koster is a contract. That contract was for five years. It gave Susan DiGiovanni five years to obtain gainful employment, even though it was not specified in the marital settlement agreement in DiGiovanni that she was required to obtain gainful employment. But, nevertheless, she was attempting to do that in the five-year period that was given to her. Why didn't she take that test that she needed to take to become licensed? She did take the test. She did, but she never secured employment? It was, the test was delayed because of the ongoing litigation. And she did not anticipate that she would be involved in litigation. When she divorced in 2005, what she believed. How much time would she have to spend in litigation to assist you, considering you've billed her for a couple hundred thousand dollars? She was, she's a very fragile person. I know that this is not part of the record, but she was nervous. She was upset. And this is how, this is what I know the situation was with my client. Okay. She, at the time of her divorce in 2005, she believed she had until 2010 to set herself up in employment. In fact, in 2007, when the first modification occurred, she was employed, earning about $10,000 a year at that time. She was working on bettering her employment, and her plan was to take a test to become a licensed social worker. That was in progress. And that certainly would have been accomplished by 2010. But the trial judge caused that to be disturbed, in that the trial judge then in 2007 reduced her maintenance, unallocated maintenance of child support, on improper facts, misapprehension of the facts. The trial judge believed, wrongfully, that there were two minor children at the time of the divorce, when in fact the older daughter was 19 years of age, was in college, living in New York. There was only one minor child. When the trial judge in 2007 reduced the unallocated award from $20,000 to $14,500 a month, the judge did that on the basis that there were two children that were now no longer an obligation of Ms. DiGiovanni. The older daughter, the judge believed, had become emancipated when the child had been emancipated prior to the divorce, and the younger child was attending boarding school in Colorado at that time. So when the court reduced the award by $5,500 a month, it believed, wrongfully, that it was reducing it based on the elimination of two children as a financial obligation to my client. That was wrong. It was really only one child that left the nest because that child was then attending boarding school and the former husband was obligated to pay 100% of those expenses. But is that contained in one of the orders that's on appeal now? That is contained. The marital settlement agreement explains the situation with the children, that the daughter was 19 and the son was 14. Yeah, but isn't the issue now the child, the second child? Yes, the younger child. The court erred in several circumstances, misapprehension of facts and law, if I may just point those out. On C-1051, paragraph 3 of the primary order on appeal, the court stated in paragraph 3 that the unallocated after an evidentiary hearing on Nick's petition to reduce this unallocated support order after the party's daughter was emancipated. That is incorrect. Wouldn't that help your client, though, the fact that he thought the unallocated maintenance and child support would have to be paid by Mrs. DiGiovanni to support two children? So had he known that, doesn't it just make common sense he would have lowered it from $20,000? It wasn't raised at that time. It should have been that only one child was the financial burden of my client to be paying for the support under the unallocated award. If only one child then was her obligation, and then that child left for boarding school, I don't believe that the trial judge, had he known that, would have reduced the unallocated support by as much as $5,500. I believe it should have been a lesser amount. The court was reducing it by $5,500 because the court believed that two children were no longer a financial burden of my client. The court went on to state on C-1080 of the same order in paragraph 94, the record also shows that the parties returned to this court on Nick's review of his maintenance obligation as a result of the emancipation of the party's oldest daughter, Jessica, which resulted in the entry of the July 19, 2007 draft order, reducing Nick's support obligation to $14,500. It goes on and on in several places of the order where the court believed that there were two minor children at the time of the divorce and reduced the, and made the first reduction in 2007 based on the fact that there were no children to be supported. Mr. Grant, if you want time for rebuttal, I suggest you go to your conclusion. Okay, I'm going to just touch on one other point. The court also entered two judgments against Susan DiGiovanni, denying her petition for attorney's fees, saying that her petition for an extension of maintenance is denied in one, and then in another part of the order, granting her permanent maintenance. The court in the part of the order that says your petition is denied said, and therefore I'm going to deny your right to contribution of attorney's fees. Had the court, the court really granted her petition, although in an amount much less than what we think is reasonable, and should have considered her petition for contribution because she did not have the financial ability to pay. The court instead entered two judgments against her for $78,000 roughly dollars on each of them. One for fees that she should pay to her ex-husband, and the other for overpayment by him of maintenance. And then finally, one other point, the court then stated that if we appeal the 3.7, the penalty clause, and we're successful before your honors, then we and our client will be responsible for the attorney fees incurred by the former husband. That's very egregious. Counsel, doesn't the settlement agreement say that it's, I believe in Article 3, if you undertake an increase, then that triggers an Article 3 relative to percentage of his pay. If it's a de novo hearing, you're not seeking an increase, it's de novo. And furthermore, you can't define how much maintenance was being paid to her. If she was paid $1 out of the $14,500, and the rest was child support, how do you measure whether or not she was successful or unsuccessful? Counsel, I have one more question, I'm sorry. Did you actually file a petition to deny the court the ability to review its own transcript of a proceeding? I did initially because we thought that there was a case that held such. And in further research, we determined that that was not the case. We couldn't find the case. I thought there was something in the back of my mind, couldn't locate it, couldn't find it, and we withdrew that motion. Thank you. Thank you, Mr. Graham. Thank you. I don't mean to rush you, but I want to make sure you have time for rebuttal. Thank you. I appreciate that. Counsel? Your Honors, if I could please the Court if I may begin. Notwithstanding the 100-page brief filed on behalf of Susan DiGiovanni and Grant & Grant, and the 67-page response, and the 19-page reply, what this Court really is to consider today are two basic issues. One, did the trial court abuse its discretion? And that, by the way, is the proper standard of review. If you look to Golden, Golden sets out, and pretty clearly it's become the standard case, the difference between review and modifiability. For modifiability, you need substantial change in circumstances. For review, whatever the order provides in terms of its scope, or if there is no scope, general review. That is the holding in Golden. That is the standard of review. What happens in the briefs, and digressing a little because I think it's important from the argument I was about to make, is you're hearing again confusion as to what the burden was at trial. There is no standard of review for the trial court. There is a burden of proof in the trial court. There is a standard of review in the appellate court. But we get confused because what were before the Court on is, as was noted by one of the justices, two issues raised by Susan in the appeal. One, as she indicates in her reply brief, quite clearly, you can argue that that's not what you said, but it's exactly what you said. We're asking for two things, review and an extension of the maintenance, and we're asking for modification and an increase. Now, had Susan come in, well, before I go there, the first issue, the first issue, and based on an abusive discretion standard, is did the trial court abuse its discretion in reducing the amount of unallocated maintenance and support from $14,500, which was the amount set at the July 2007 hearing. And that, by the way, was a full evidentiary hearing on a modification. Nick had come to the court and said, my daughter is no longer in college. And counsel is wrong as to the facts, because in 2007, the transcript is attached. The court was very well aware that he was dealing with a child who was graduating from college. So that 2007 order, which is a part of this record, became the baseline. You had one child left. And, by the way, Nick, pursuant to the 2005 marital settlement agreement, was paying to Susan $20,000, from which Susan, by the way, was paying by the agreement, the marital settlement agreement, one-third, after certain funds had been exhausted, of their daughter's college expenses. So when Nick came in 2007, and it's part of the transcript, it's not that the court wasn't aware. The court was very aware. The transcript is made part of the order. And the court notes, with the graduation of Jessica, there is less obligation from Susan. And, in any event, it's waived. Any argument that he makes as to misapprehension of the 2007 order, that's res judicata as to that time and those facts, and that's Petterson and Connors, Your Honor. You don't go back and dispute that now in this. You didn't appeal it. And now you want to relitigate it in the 2009 proceeding. So the first issue, was there an abuse of discretion? And then, secondly, did the court err in enforcing Article III, paragraph 3.7, of the party's settlement agreement, which provided, as is noted already, if either party comes within five years. And this was, of course, an attempt to stop litigation other than what was necessary. It was reviewable after five years without this poison pill penalty clause, whatever you want to call it. But it was an attempt by the parties to stop unnecessary litigation with a penalty if you came within the first five years. And so the agreement contemplated that a party could come within the first five years. But if you came within the first five years, Nick asking for an increase, Susan, excuse me, Nick asking for a decrease, Susan asking for an increase. If you were unsuccessful, you were subject to the penalty. Did Susan come and ask for an increase? That's indisputable. And the court says, look, in 2007 when I did shift the burden to her to come in for review, I didn't tell her to come in for an increase. She came in for an increase. And so when she comes in for an increase and she's unsuccessful, the court conducts a hearing and pursuant to Article III, 3.7, says of the 118 requested, approximately 78-5 was the number, is to be paid to Nick because of that provision. And then in the alternative, and this is how Grant and Grant becomes a party to the case, if for some public policy reason, none argued and none existing, under 502 of the Act, the parties are encouraged to contract, encouraged to avoid litigation. They did that. And so when Susan comes in and says, as she did, that there are public policy reasons, you shouldn't enforce it, the court says in its order of 2010, well, if you somehow prevail on the public policy reasons, in light of your theories, in light of what should have been a rather simple hearing and a discrete hearing, that is, we go from 2007, either by review or however you wish to come, as you did, by modification. We take a look at that. And when we look at what you did in this case in trying to resurrect, essentially because the burdens are confused, and let me digress again for a second. 510, modification of maintenance. It says look at the 510 factors and also go back and look at the pre-decree 504 factors. Can I ask you a question about the 510? Sure. Your opponent argues that the court abused its discretion in order to decrease retroactively. What's your response to that? Actually, I think if there was an abuse of discretion, it should have been retroactive, not to the February reduction, but to the time of the filing, as the court had an ability to do. The court didn't give him full retroactivity. The fact is, on an oral motion, the court reduced from the $14,500 Nick was paying monthly to Susan, the amount to $12,000, noting then that under the Lair case, there is, based on the emancipation of a child, a per se change in circumstances. So in February, it modifies it. But the trial court doesn't go back to the time of the filing, as it had every right to do, discretionary with the court, to have reduced it to $6,875 per month from the filing in August of 2009. What the court does is limit it to the February order. So if anybody suffered, and by the way, that was one of the Haken findings that the court makes, in terms of the harassment and the reasons that if under the Article 3, Section 3.7, the award is for some public policy reason not to be granted, under Haken and under 508B, this motion was advanced for improper purposes. It was harassing. It allowed her to receive support even at a reduced amount that she wasn't entitled to. And the retroactivity, quite frankly, should have gone back to the time of the filing and did not. So I hope that answers your question, Your Honor. So those are the two questions. One, was there an abuse of discretion? And by the way, again, Golden sets out the six elements you look at when you do review and quite clearly says the case that he advances is the seminal case, that this is an abuse of discretion argument. So, again, confusing burdens of proof, confusing standards of review, and proceeding to trial to try and essentially retry the whole divorce. Because, again, consider what's being asked of you here, Your Honors. You are being asked to find that there be trial de novo on review. Throw out everything that happened. Forget Pedersen. Forget Connors. Forget that you go from the last order to now any changes. And on review, it doesn't have to be substantial changes. But forget all that. We get to retry standard of living. We get to retry how property was divided. That's exactly what's being asked of you, Your Honors. And the trial court found that this was improper. It created enormous litigation. The costs of the litigation were obscene. And based on the poison pill or otherwise, an award was made to Nick, and it should have been. In fact, the trial court originally granted, as you know, a motion in limine saying we go from 2007 to the present. And then later, when there was going to be this two- or three-day offer of proof, the court took the error out, any potential error out, and said, you know what? I'm not going to take it as an offer of proof. I'll let you do what you want to do. But that's what created the cost of this litigation. And then what happened at the trial? Well, there were five witnesses to testify. Her own expert testified as to her ability to work. Her own expert said that she could make, on average, a social worker in her circumstances could make $37,500. And the court was defiant that based on her own expert's testimony, her failure to get a job as she was working when she filed the petition, but not then at the time of the hearing, her reasons for not going to get a job, not having a job, were in bad faith. The expert that she put on the stand, not credible. Why not credible? Because the expert herself said that the protocol that she was given to use could not possibly essentially establish what they were even trying to do. And that was a lifestyle of a 25-year marriage when only one year was being used, when trips that weren't taken were being put into the equation, when if it costs this much for four, that was the number that was being used, despite now we were just dealing with Susan and not a whole family, despite the fact that the perquisite that Nick had was no longer even available to himself. So does Susan prevail on her petition? Is she subject to 3.7? Of course she's not. And I would note this. Nick was very mindful of this provision, 3.7, so that when he comes in in his own petition saying, look, my income is down 30 percent in the three-year period that I'm now before the court from the 2007 hearing, my son has emancipated, and Susan has rehabilitated. She has a degree from the University of Chicago. By her own account, she is a good social worker. She can work. His petition is granted. The important thing to note is he didn't ask for any specific amount. He asked, please review it and do what's appropriate, and he didn't ask for termination because he knew that Susan was not likely, even in the best of circumstances, to ever be in the position that she would earn enough by herself without some unforeseen event occurring that dropped a financial award in her lap. He never asked for termination. There is nothing that Susan won in this hearing. If he never came in for review, there never would have been a termination, and he didn't, in his own petition, ask for termination. So, Your Honors, I'll go on, but the trial court makes very specific findings about why the case was tried in the wrong way, for the wrong reasons, and then awards the fees. The reduction comes after competent evidence comes in from Nick, who was found credible as to all of the elements that he pled in his own petition, and the court found that $10,000 was what she needed and then found further that because she could earn from her own expert's mouth, $3,750, a reduction of $3,125 per month against the $10,000 per month, bringing it down to the $6,875 per month. And it should also be noted that when Nick got divorced, Nick assumed all the debt. In 2005, he assumes an enormous amount of debt. There was an imbalance at the time of the entry of the marital settlement agreement and the distribution of property, and the court notes at trial that imbalance still persisted. His estate was worth approximately $220,000. Her estate was still worth a million. And so you can't just come in and argue, as they did, a standard of living factor. There were all of the factors for the court to consider. Standard of living was not one it should have considered because of agreements, and the court properly ruled initially would go from 2007 to 2009, but then later takes error out for all of us by simply saying, all right, you want to do it, go do it at your peril. Counsel, can I ask a question about the fees? Yes. If the court made a ruling as to fees, it should be allowed. And your opponent makes an argument relative to the Kaiser and other cases they have to do with how attorneys' fees are determined. There wasn't a hearing. There was a two-day hearing. Not only was there a two-day hearing, the court presided over the case, over all of the pretrial motions, because this was in post-decree. Judge Lopez gets this as a post-decree matter. Judge Lopez heard eight days of trial, so he was involved in the trial itself and had personal knowledge of what took place. Was there arguments of counsel relative? There was a two-day hearing. The attorneys testified. There was cross-examination. And the court, again, this would be an abusive discretion standard, heard competent evidence as to what occurred, and I think it's clearly supported when, in fact, Susan, as the record notes, spent over $200,000 at the time in legal fees herself. You have one minute, sir. Well, to conclude, I think there's no question that Nick prevails on his petition and, more importantly, insofar as fees are concerned, Susan was unsuccessful in her request. And, again, as the Justice noted, it's clear she asked for an increase. It's in their reply brief. It stated very clearly Susan was asking for two things, an extension, and she was asking for a modification and an increase. She was unsuccessful. She was unsuccessful and tried a case on wrong burdens. She was being told that this was not the way to do it, and yet she persisted. It was harassing to Nick in terms of the discovery that had to be produced. It was harassing to Nick in terms of the monies he had to spend and the support that he had to continue to pay. The trial court, after hearing their own witnesses as to lifestyle, said even if it were to be considered, you didn't establish it. So, Your Honors, I think there was no abusive discretion either in the reduction and certainly not as to the fees. There being no public policy argument that was even raised, Your Honors, I would ask that there be a finding that there was no abusive discretion. One final point I would make, subject to any questions, Nick is entitled to fees for this proceeding. We have requested in our petition that this matter be remanded, as Susan has again persisted in her belief that she should have prevailed on her petition. She has appealed it now. I'm going to ask, Your Honors, to remand, as we did in our briefs, this matter back to the trial court for the imposition of fees pursuant to Article 3, Paragraph 3.7 of their marital settlement agreement. If we don't enforce the agreements, they're not worth that much. So I ask that you continue to enforce their agreement. The trial court did order Susan to pay $66,000, roughly. Is that correct? And Nick still had to pay in excess of $35,000, $40,000 in addition to that, did he not? It wasn't in addition, Your Honor. It was as part of. The fact is that if he was awarded the reduction, the money,  if he was awarded the reduction, he got two things. He got fees. She was ordered to pay $78,000. Okay. I'm sorry. So $78,000. You billed more than that, did you not, Mr. Levin? We billed $118,000, but we stipulated at trial that some of it should come out. And so that came down to $95,000, later reduced to $78,000. My point is that Nick paid money as well. Oh, yes. Oh, yes. Nick paid substantial money for his own portion of the case. This was in that hearing that Justice Connors asked about. In that hearing, there was a parsing out, and this may be helpful, there was a parsing out of those fees directly attributable to Susan's petition. Thank you.  Mr. Grant? Yes, Your Honor. Five minutes, sir. 3.7 states that if we prevail before Your Honors, then we pay a penalty, then we are sanctioned. That's how I read it. If I win here, then you are to remand it back so that Judge Lopez can order attorney fees to be assessed against my client and us. I don't think that makes any sense. Secondly. What's your argument if you lose here? That's the fees. That argument doesn't have to be made because that provision doesn't state what happens if we lose. There is no sanction if we lose. It's just if we prevail. That's the wording. That's the wording of the order. If I may just read quickly. However, under Supreme Court rule, if the appeal is an unnecessary one, we may proceed and assess fees. That would be under the statute. Yes. That would be not pursuant to the order. I'm only addressing that order. If I may just read a portion of one paragraph in the Golden case. I quote. Therefore, because Section 510A does not specify what burden the parties have during review proceedings, and in view of statements in previous cases, that a substantial change in circumstances need not be shown in review proceedings. That means review of maintenance. We hold that the moving party in review proceedings does not have the burden of proving a substantial change in circumstances. The court, in its order, ordered us to have to be imposed with that burden of having to prove a substantial change in circumstances. We had to go through a long trial in order to prove a substantial change in circumstances as ordered by the court. The court found that we didn't prove that. Now, we shouldn't have had to have proven it because of those cases. And in addition, the court shortened the five-year marital settlement terms from 2005 to 2010 that our client was to receive support. Shortened it to 2008 and said she gets it until 2008, the reduced amount. If she doesn't file within 30 days of the boy's graduation from high school, she will be barred from further maintenance. So her maintenance, her support obligation, ended in 2008. It now starts anew. The extension provision of the order is a new award. It starts from zero. It's a new award. We aren't modifying anything. We're asking the court, would you give her future maintenance? And if so, we have a right on a de novo basis to ask that it be given from a standpoint of us proving standard of living and all the other factors of 504. We start from scratch. That's how I read Golden and that's how I read Blum, the Supreme Court. Her estate, when she was awarded in 2005, diminished greatly. It consisted of the marital home, equity in the marital home, which diminished greatly. Your Honors can take judicial notice of the fact what happened in 2008 and 2009. She had some retirement benefits that were awarded to her from her former husband. And a couple of hundred thousand in actual assets that she could use. That's really what she had, not a million dollars. We plead throughout the order, as I stated previously, but Mr. Leavitt says otherwise. There was one minor child only at the time of the divorce. There were not two. The trial court mistakenly believed that there were two minor children giving rise, one of whom became emancipated by 2007, according to Judge Lopez. And the other who went away to school. That gave rise to the change in circumstances. The court found in the 2007 order that the former husband's income did not decrease. That the only change in circumstances were that the older child was emancipated, which had happened before they divorced. It wasn't a change in circumstances. So the court was confused. Counsel, the reviewing order is off from 2010, are we not? Yes. So the 2007 order is not on review. I just was using that kind of as a starting point to show what happened. Okay. And then the court in the 2010 order was referring to those circumstances. Thank you. The last thing I'd like to state is that she had a marital settlement agreement that gave her five years of support. That was a contract. Blum says that's a contract. It's enforceable as a contract. In 2007, the trial court took that away from her and gave her until 2008, a three-year. Abrogated the contract. Gave her three years of support. And imposed an additional burden that she would have to file a petition to extend prior to a certain time limit. The original marital settlement agreement stated that after the expiration of the five years, she could come in at any time after that and ask for an extension. There would be no cutoff. It would not bar her from future maintenance. She was greatly reduced in her benefits by the 2007 order, which is contrary to what Blum says. It's an enforceable contract. It should have been, it should have remained, the five years should have remained. I don't think I have anything further to add other than I would ask your honors to reverse the trial court and to remand for further proceedings to determine the proper amount of maintenance and other issues that are open. Thank you. Thank you, counsel. Thank you to all the litigants and their attorneys. This case is being taken under advisement.